Jones, Judge:
The claim of State Construction, Inc., against the State Road Commission in the total amount of $296,308.28 arises out of a highway construction project in Wayne County and comprises three items as follows: 2,148.24 cubic yards extra quantity of bituminous treated aggregate base course at the bid price of $6.40 per cubic yard, totaling $13,748.74; 32,954.85 gallons extra quantity of bituminous material at the bid price of 18c per gallon, totaling $5,931.87; and extra cost for overrun of unclassified excavation, which was allowed in the final estimate at the bid price of 90c per cubic yard, and for which the claimant contends that under the contract specifications it was entitled to a supplemental agreement with an increased cost price of $3.02 per cubic yard, plus 15 c/(, or a total increase for this item of $276,627.67.
The bituminous treated aggregate base course and the bituminous material mixed therewith was processed in accordance with a “job mix” formula called for in the specifications. This formula had not been used before on a project requiring the maintenance of traffic during construction and it turned out badly. It developed that it took approximately seven days for the material to cure, set and harden, and it was continually damaged by traffic and had to be worked and reworked. The most severe damage was caused by heavy trucks hauling paving materials to an adjoining State Road Commission project. The Commission refused to provide for the detour of these trucks for the apparent reason that a longer haul would result and would require additional compensation to the other contractor. *237 The extreme rutting and splashing of the uncured base course material was clearly shown by photographs received in evidence. The State Hoad Commission made allowance for re-blading and rerolling and the covering force account work order for costs of labor and equipment contained the following recital:
“***to reblade and reroll Bituminous Treated Aggregate Base Course over entire length of project. Reason for Force Account Work Order: Traffic was maintained through the entire project and after the placement of the Bituminous Treated Aggregate Base Course, the material was disturbed by job traffic and heavy trucks traveling to the adjacent project.”
However, no allowance was made for wasted material.
The Court is of opinion that the large overrun of bituminous treated aggregate base course and bituminous material was due to a combination of circumstances which were or should have been within the control of the State Road Commission. The contention of the Commission that the excess quantities must have resulted from extra thickness of the base course is not a persuasive defense in view of the fact that it established and set the elevations and supervised the laying of the material. There is no showing that either party anticipated the long curing time required by the experimental “job mix” specification or the extremely heavy traffic occasioned by the adjacent road project, and there is no doubt that these factors were burdensome and damaging to the claimant. The quantities of the materials delivered to the project were not questioned by the Commission; and the contract was let on the basis of a unit bid price for estimated quantities of these materials. Based on the foregoing findings, the Court is of opinion that the amounts claimed for extra materials are just and reasonable and should be allowed.
The claim for overrun of unclassified excavation was the result of several landslides which occurred in the work area and created a hazardous situation, requiring emergency operations. These slides endangered the tracks of the Norfolk & Western Railway and the public highway, and substantial extra equipment and personnel had to be rushed to the project. Much of the work was performed under adverse conditions and pres *238 sures not contemplated by the contracting parties. The landslides and their troublesome consequences continued for several weeks. The estimated planned quantity of unclassified excavation was 322,700 cubic yards, and the overrun was 113,584 cubic yards, or approximately 35 per cent. The applicable provisions of the Standard Specification controlling this situation are as follows:
“1.4.2 INCREASED OR DECREASED QUANTITIES: The Commission reserves the right to make alteration in the Plans or in the quantities of work as may be necessary, either before or after the beginning of work under the contract, to insure completion of the work. Such alterations shall not be considered as a waiver of any conditions of the contract nor invalidate any of the provisions thereof, provided such alterations do not decrease or increase the total cost of the project more than twenty-five per cent, based on the original contract quantities and the unit bid prices, and provided further that such alterations do not result in an increase or decrease of more than twenty-five per cent in quantity of any one major contract item. When alterations are made in excess of those herein specified, then either party to the contract, upon written demand, shall be entitled to a revised contract consideration to be fixed and agreed upon in a written supplemental agreement, covering the necessary changes, executed between the contracting parties.*** ¿1
“In the event the Engineer and the contractor are unable to arrive at a mutual agreement, the contractor may have the option either of proceeding with the work and receiving payment therefor, in an amount determined by the Engineer as the reasonable direct cost of the material and labor furnished by the contractor, in the manner and amount as hereinafter prescribed in Article 1.4.4 for Extra work; or of permitting the work necessary to be done at the time and in the manner deemed most expedient by the Commissioner.
“A major item shall be defined as any item whose total cost is equal to or greater than ten per cent of the total original contract cost.***
“1.4.4 EXTRA WORK: When so ordered in writing by the Engineer, the contractor shall furnish material and do extra work not otherwise provided for in the Plans and Specifications. Extra work shall be done in a workmanlike manner in accordance with the Plans and these Specifications. Payment therefor shall be *239 made at unit prices to be agreed upon by the contractor and the Commission before the work is begun and as hereinafter provided. If prices or compensation for extra work be not agreed upon, the Commission may order the contractor to do the work and payment shall be made therefor at its actual reasonable cost to the contractor, as determined by the Engineer, plus the percentages as provided for in Article 1.9.4 of these Specifications. * * *
“1.9.4 EXTRA AND FORCE ACCOUNT WORK: Extra work ordered and accepted shall be paid for under a Supplemental Agreement as provided in Article 1.4.2, or Force Account, as agreed upon and herein provided.***”
The overrun exceeding 25 per cent on a major item of the contract, negotiations toward a supplemental agreement were initiated as removal of the slides continued. There was a tentative agreement on a figure of $1.50 per cubic yard, but the State Road Commissioner contended that the claimant had not furnished sufficient proof of additional costs to support such a payment. Whether such proof was forthcoming prior to the hearing of this claim is uncertain, but the Court is of opinion that the proof offered by the claimant at the hearing did substantiate a charge of $1.50 per cubic yard for additional unclassified excavation, but not a higher figure as claimed. Therefore, the Court finds that the claimant is entitled to payment for this item on the basis of 113,584 cubic yards at the additional price of 60c per cubic yard or $68,150.40.
Accordingly, the Court is of opinion that the items of this claim which the Court has hereinabove found should be allowed, are fair and reasonable and in equity and good conscience should be paid; and the claimant, State Construction, Inc., is hereby awarded the sum of $87,823.61 against the State Road Commission.